IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DEBRA ANTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | 11-cv-2573 JTM/KMH |
| **v.** ) | |
| ) | |
| **KRAMER & FRANK, P.C.,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

NOW COMES the Plaintiff, DEBRA ANTON, by and through her attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for her complaint against the Defendant, KRAMER & FRANK, P.C., Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. DEBRA ANTON, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Wichita, County of Sedgwick, State of Kansas.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to HSBC Bank Nevada, N.A. (hereinafter "HSBC").

6. The debt that Plaintiff allegedly owed HSBC was for a credit card, on which charges were incurred primarily for the personal use of Plaintiff and/or for household expenditure.

7. Upon information and belief, Midland Funding LLC purchased acquired and/or otherwise obtained the debt Plaintiff allegedly owed to HSBC.

8. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9. KRAMER & FRANK, P.C., (hereinafter, "Defendant") is a law firm engaged in the collection of debt within the State of Kansas. Defendant is registered as a Professional Corporation in the State of Missouri.

10. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

11. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

12. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

13. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

14. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV.   ALLEGATIONS

15. On or about April 29, 2011, a lawsuit was filed against Plaintiff in the District Court of Sedgwick County, State of Kansas, captioned as *Midland Funding LLC v. Debra Anton*, with case number 11 LM 6759, hereinafter ("the Sedgwick County matter").

16. The Sedgwick County matter was filed against Plaintiff relative to the debt she allegedly owed to HSBC.

17. Defendant represents Midland Funding LLC in the Sedgwick County matter.

18. On or about May 2, 2011, a Summons was issued in the Sedgwick County matter for Plaintiff to appear at court.

19. The aforesaid Summons required that Plaintiff appear in court on June 8, 2011.

20. Plaintiff received the aforesaid lawsuit and Summons.

21. On or about May 30, 2011, Plaintiff sent a correspondence to Defendant.

22. Upon information and belief, Defendant received the aforesaid correspondence.

23. In the aforesaid correspondence, Plaintiff informed Defendant that she disputed having entered into a contract with Midland Funding LLC.

24. In the aforesaid correspondence, Plaintiff requested that Defendant provide her with information relative to the debt on which it was attempting to collect.

25. On or about June 3, 2011, the Sedgwick County court sent a notice to Plaintiff.

26. In the aforesaid notice, Plaintiff was informed that the Sedgwick county matter had been scheduled for a Pre-Trial hearing on July 6, 2011.

27. On or about July 6, 2011, Plaintiff went to the Sedgwick county court.

28. Plaintiff then provided her name to a Clerk at the Sedgwick county court.

29. Plaintiff was informed by the Clerk to take a seat in the courtroom's waiting area.

30. Due to the Clerk's instructions, Plaintiff stayed in the courtroom's waiting area.

31. Multiple individuals were in the courtroom's waiting area with Plaintiff.

32. Another individual, a female, then started to call the names of various individuals who were in the courtroom's waiting area with Plaintiff.

33. Plaintiff believed that the aforesaid female who was calling individuals' names to be a representative of the Sedgwick County court.

34. The aforesaid individual did not inform Plaintiff that she was a duly authorized representative of Defendant.

35. The aforesaid individual did not inform Plaintiff that she was a debt collector.

36. The aforesaid individual was a duly authorized representative of Defendant.

37. After various individuals' names were called by Defendant, Defendant took the individuals whose names it had called into a separate room from the courtroom's waiting area where Plaintiff had been waiting.

38. After a period of time, Defendant and the individuals who had entered the separate room would leave and Defendant would again start to call the names of additional individuals who were in the courtroom's waiting area where Plaintiff had been.

39. Plaintiff heard a series of individuals' names that were called by the duly authorized representative of Defendant.

40. At approximately 2:00 p.m., on or about July 6, 2011, Defendant then called Plaintiff's name.

41. At the time Defendant called Plaintiff's name, Defendant also called the names of three (3) other individuals.

42. The three (3) other individuals whose names were called were not individuals who were liable for the debt on which Defendant was attempting to collect from Plaintiff.

43. Prior to July 6, 2011, Plaintiff did not know the three (3) other individuals whose names were called.

44. Plaintiff never provided Defendant with consent to communicate with third-parties relative to the debt on which it was attempting to collect.

45. Plaintiff never provided Defendant with consent to communicate with the three (3) aforesaid individuals relative to the debt on which it was attempting to collect.

46. After Defendant called Plaintiff's name and the names of the three (3) other individuals, Defendant informed Plaintiff and the aforesaid individuals to follow her into a separate room.

47. Plaintiff and the aforesaid individuals, along with Defendant, entered the separate room.

48. The door of the separate room was then closed.

49. Plaintiff and the three (3) other individuals were then instructed by Defendant to sit down in the chairs that were in the room.

50. Upon entering the room, Plaintiff believed that the individual who had led her and the others into the room was a representative of the Sedgwick County court.

51. When in the room, Defendant started to engage in a conversation with Plaintiff and the three (3) other individuals.

52. Defendant addressed Plaintiff and the three (3) other individuals collectively as if they were a party to the same lawsuit.

53. Defendant addressed Plaintiff and the three (3) other individuals as a group.

54. When in the room, for the first time, Defendant's duly authorized representative identified herself as "Courtney Mikesic."

55. Defendant's duly authorized representative then stated that she was an attorney for Midland Funding.

56. Defendant then stated that it was a debt collector.

57. Defendant also stated that it was attempting to collect a debt.

58. Defendant also stated that any information obtained would be used for the purpose of collecting a debt.

59. In the room, Defendant then stated to Plaintiff and to the three (3) individuals in the room "[w]e are here to schedule your court date or to make a settlement on your case."

60. Defendant then stated "I represent Midland Funding who is suing you."

61. Defendant then stated "[y]ou can make a settlement today or you can schedule a trial date."

62. Defendant then stated "[i]f we go to trial I will be calling witnesses against you."

63. Defendant then stated "[y]ou have the option to call your own witnesses."

64. Defendant then stated "[i]f you go to trial it will be too late to reach a settlement."

65. Defendant then stated "[p]lease know I cannot advise you as I am representing the plaintiff in this case, the person who is suing you."

66. During the time that Defendant made the aforesaid statements, the three (3) other individuals in the room with Plaintiff heard Defendant's statements.

67. Defendant's representations, as delineated above, conveyed to the other individuals in the room that Plaintiff owed a debt.

68. Defendant's representations, as delineated above, conveyed to the other individuals in the room that Plaintiff was a defendant in a lawsuit that had been filed against her relative to a debt she owed.

69. Defendant's representations, as delineated above, conveyed to the other individuals in the room that Plaintiff had been sued.

70. Upon information and belief, at the time Defendant informed Plaintiff that it would call witnesses against her if her matter proceeded to trial, as delineated above, Defendant had no intention of calling witnesses against Plaintiff if the matter proceeded to trial.

71. Upon information and belief, at the time Defendant informed Plaintiff that it would call witnesses against her if her matter proceeded to trial, Defendant had not reviewed the file in the underlying matter filed against Plaintiff.

72. Upon information and belief, at the time Defendant informed Plaintiff that it would call witnesses against her if her matter proceeded to trial, Defendant had not discussed with its client whether any witnesses would be called at the trial against Plaintiff to testify on behalf of its client.

73. Defendant's representations to Plaintiff that she could either make a settlement or go to trial, as delineated above, had the effect of conveying to an unsophisticated consumer that Plaintiff had no other options, other than those provided by Defendant, relative to the lawsuit that Defendant had filed against her.

74. After Defendant made the aforesaid statements to Plaintiff and the three (3) aforesaid individuals, Defendant then asked Plaintiff and the aforesaid individuals "[w]ell then, who wants to go first?"

7

75. One of the other female individuals in the room informed Defendant that she would go first.

76. Defendant then asked for the female's name and the aforesaid female provided it to Defendant.

77. The aforesaid female informed Defendant that she wanted a trial date.

78. Defendant and the aforesaid female then agreed upon a date to set her case for trial.

79. After agreeing on a trial date, the aforesaid lady asked Defendant if there was anything else she should do.

80. Defendant told her "[n]o that is it."

81. The aforesaid female then left the room.

82. The other two (2) individuals remained in the room with Plaintiff, but neither of the two (2) individuals spoke.

83. After a period of silence, Defendant said "[w]ho wants to go next?"

84. Neither of the other two (2) individuals who remained in the room with Plaintiff spoke. As a result of the aforesaid individuals' silence, Plaintiff informed Defendant that she would go next.

85. At the time Plaintiff started to speak to Defendant, the two (2) other individuals remained in the room with Plaintiff and Defendant.

86. Plaintiff was unaware that she could request to speak with Defendant privately.

87. Defendant never informed Plaintiff that she could speak with Defendant privately.

88. The two (2) other individuals heard the entire conversation that then occurred between Plaintiff and Defendant.

89. Defendant asked Plaintiff to provide her name.

90. Plaintiff then provided Defendant with her first name and her last name.

91. Plaintiff stated to Defendant "[m]ay I ask you a question first? Did you receive my letter?"

92. Defendant responded to Plaintiff's question by informing Plaintiff that it was "way too late for that."

93. Defendant's representations that it was "way to late" had the effect of conveying to an unsophisticated consumer that Plaintiff could no longer request that Defendant provide her with documentation relative to Plaintiff allegedly owing a debt to Midland Funding LLC, as set forth in the correspondence that Plaintiff had previously sent to Defendant.

94. Defendant's representations that it was "way to late" had the effect of conveying to an unsophisticated consumer that Plaintiff could no longer request that Defendant provide her with information relative to the debt on which it was attempting to collect, as set forth in the correspondence that Plaintiff had previously sent to Defendant.

95. Defendant's representations that Plaintiff could no longer request that Defendant provide her with documentation or information relative to the debt were false, deceptive and/or misleading given that even if Plaintiff could no longer request that Defendant validate the debt on which it was attempting to collect, pursuant to 15 U.S.C. 1692(g), Plaintiff was still able to obtain documentation and information from Defendant by engaging in discovery in the Sedgwick County matter.

96. After Defendant made the aforesaid comment to Plaintiff that it was "way too late for that" Plaintiff believed she was precluded from asking Defendant any additional questions about the debt on which it was attempting to collect.

97. After Defendant made the aforesaid comments to Plaintiff, Plaintiff believed she was precluded from asking Defendant for any additional information or documentation relative to the debt on which it was attempting to collect.

98. Given that Plaintiff was sitting in a room with two (2) individuals that she did not know, Plaintiff felt ashamed, embarrassed and uncomfortable asking Defendant any additional questions relative to the court case or the debt on which it was attempting to collect.

99. Plaintiff then informed Defendant that she would proceed with trial.

100. Defendant asked Plaintiff if she was available on August 16, 2011 to proceed with the trial.

101. Plaintiff informed Defendant that she was not available on August 16, 2011.

102. Plaintiff told Defendant that she would be on vacation from August 11, 2011 through August 16, 2011.

103. Plaintiff told Defendant that due to being on vacation she would not be available on August 16, 2011.

104. Plaintiff advised Defendant that due to being on vacation she would prefer a trial date in September 2011.

105. Defendant then asked Plaintiff if she was available on September 13, 2011; Plaintiff advised Defendant that she was.

106. The parties then agreed that the trial would be set for September 13, 2011.

107. Plaintiff asked Defendant if that was all there was to discuss.

108. Defendant informed Plaintiff "yes" and told Plaintiff that she could leave.

109. Defendant's communications with Plaintiff, as delineated above, caused Plaintiff to feel as if her privacy had been violated as Defendant communicated with her in front of other

individuals that Plaintiff did not know and disclosed to said individuals that Plaintiff owed a debt.

110. Defendant's communications with Plaintiff, as delineated above, caused Plaintiff to feel embarrassed as Defendant communicated with her in front of other individuals that Plaintiff did not know and disclosed to said individuals that Plaintiff owed a debt.

111. Subsequent to July 6, 2011, despite Plaintiff having informed Defendant that she would be unavailable from August 11, 2011 through August 16, 2011, Defendant filed a motion to strike discovery requests filed by Plaintiff relative to the Sedgwick County.

112. Defendant presented the aforesaid motion on August 12, 2011, despite being cognizant that Plaintiff would not be available on that date.

113. Upon information and belief, Defendant decided to present the aforesaid motion on August 12, 2011, in an attempt to present the aforesaid motion in Plaintiff's absence.

114. As a result of Defendant filing the aforesaid motion, Plaintiff was required to attend court on August 12, 2011.

115. As a result of Plaintiff having to attend court on August 12, 2011, Plaintiff had to cancel her trip, about which she had previously informed Defendant.

116. Plaintiff had planned the aforesaid trip in December 2010.

117. Plaintiff informed her employer in December 2010 that she would be using her vacation days in August 2011.

118. Plaintiff had planned the aforesaid trip so that she could take her son with her to Nebraska to visit her family.

119. Plaintiff's mother, sisters and their respective families live in Nebraska.

120. The vacation was specifically planned for August 2011 so that Plaintiff's son would be able to go on vacation during the summer months before the start of the school year.

121. The vacation was also specifically planned for August 2011 so that Plaintiff could travel during the summer months. Plaintiff had planned to drive to Nebraska so she wanted to travel during a time period when she did not have to worry about encountering winter weather conditions.

122. Plaintiff and her family had also planned to drive to South Dakota during Plaintiff's trip. As such, Plaintiff scheduled her trip for August 2011 so that it would be easy for her and her family to drive to South Dakota without having to worry about encountering winter weather conditions.

123. As a result of having to cancel her vacation, Plaintiff was disappointed, upset and frustrated.

124. As a result of having to cancel her vacation, Plaintiff experienced a strained relationship with her family that caused Plaintiff to experience considerable distress.

125. Plaintiff attended court on August 12, 2011 due to Defendant's presentation of its motion on said date.

126. On September 13, 2011, Plaintiff attended court for her trial date.

127. Again, while at court an individual called Plaintiff's name.

128. The aforesaid individual, informed Plaintiff to follow him into a separate room.

129. Plaintiff then followed the aforesaid individual into a separate room.

130. Plaintiff then engaged in a conversation with the aforesaid individual.

131. The aforesaid individual informed Plaintiff that his name was "Chris Holzman."

132. The aforesaid individual informed Plaintiff that he was an attorney.

133. The aforesaid individual informed Plaintiff that he "had been hired by [Defendant] to fill in at court."

134. The aforesaid individual further informed Plaintiff that he was "regularly hired by [Defendant] to attend court."

135. On September 13, 2011, at all relevant times, the aforesaid individual was acting as a duly authorized representative, agent and/or employee of Defendant.

136. Plaintiff then engaged in a conversation with the aforesaid duly authorized representative of Defendant.

137. At no time did Defendant inform Plaintiff that he was a debt collector.

138. At no time did Defendant inform Plaintiff that he was attempting to collect a debt from Plaintiff.

139. At no time did Defendant inform Plaintiff that any information obtained from Plaintiff would be used for the purpose of attempting to collect a debt.

140. Defendant informed Plaintiff "we have to reach a settlement."

141. Defendant's representation that Plaintiff had to reach a settlement relative to the debt she allegedly owed was false, deceptive and/or misleading given that Plaintiff had other options available to her relative to the debt on which Defendant was attempting to collect such as disputing the debt and/or proceeding to trial.

142. Defendant's representation that Plaintiff had to reach a settlement relative to the debt she allegedly owed misrepresented the character, nature and/or legal status of the debt on which Defendant was attempting to collect given that Plaintiff had other options available to her relative to the debt on which Defendant was attempting to collect such as disputing the debt and/or proceeding to trial.

143. Plaintiff then informed Defendant that she was not at that time willing to reach a settlement with Defendant.

144. Defendant informed Plaintiff that if she did not reach a settlement then Defendant would file a motion to continue the trial.

145. No settlement was reached between Plaintiff and Defendant on the aforementioned date.

146. On or about September 13, 2011, after the aforesaid conversation, the parties appeared before the judge.

147. Defendant, via the aforesaid individual, then dismissed the Sedgwick county matter against Plaintiff.

148. Defendant's representation that if Plaintiff did not reach a settlement with Defendant then it would file a motion to continue was false, deceptive and/or misleading given that despite Plaintiff not having reached a settlement with Defendant, Defendant dismissed the matter against Plaintiff.

149. Defendant's representation that if Plaintiff did not reach a settlement with Defendant then it would file a motion to continue was a hollow threat made by Defendant to Plaintiff in an attempt to coerce Plaintiff into making a payment to Defendant relative to the debt on which it was attempting to collect.

150. In its attempts to collect the debt allegedly owed by Plaintiff to HSBC, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and stating that the consumer owes any such debt in violation of 15 U.S.C. §1692b(2);

   b. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if

       otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

   c. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

   d. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   e. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

   f. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

   g. Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

   h. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

   i. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

151. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V.    JURY DEMAND

152. Plaintiff hereby demands a trial by jury on all issues so triable.

153. The Plaintiff, DEBRA ANTON, by and through her attorneys, Larry P. Smith & Associates, Ltd., hereby respectfully requests that the trial of this matter proceed in Kansas City.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, DEBRA ANTON, by and through her attorneys, respectfully prays for judgment as follows:

15

      a.      All actual compensatory damages suffered;

      b.      Statutory damages of $1,000.00;

      c.      Plaintiff's attorneys' fees and costs;

      d.      Any other relief deemed appropriate by this Honorable Court.

      Respectfully submitted,
**DEBRA ANTON**

By:    s/ D. Matthew Durgin
      Attorney for Plaintiff

Dated: October 16, 2011

D. Matthew Durgin (Atty. No.: 21557)
LARRY P. SMITH & ASSOCIATES, LTD.
8508 W. 90th Terrace
Overland Park, KS 66212
Telephone:   (913) 908-2313
               (913) 871-4170
Facsimile:     (888) 418-1277
E-Mail:       mdurgin@smithlaw.us